[Cite as *State v. Donegan-Lawson*, 2024-Ohio-5494.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

      Plaintiff-Appellee,          :

                                        No. 23AP-735
v.                                         :
                                    (C.P.C. No. 21CR-4367)

Jacalyn Donegan-Lawson,                    :            (REGULAR CALENDAR)

      Defendant-Appellant.         :

---

D E C I S I O N

Rendered on November 21, 2024

---

**On brief:** *Dave Yost*, Attorney General, *Andrew Keilczewski*, and *Sean R. Macklin*, for appellee. **Argued:** *Sean R. Macklin.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Jacalyn Donegan-Lawson, appeals her convictions for Medicaid fraud and theft, both fourth-degree felonies. Following a bench trial, Donegan-Lawson was found guilty of both offenses and sentenced to a term of 18 months of non-reporting probation. She asserts two assignments of error on appeal, and the state has conceded she should prevail on her second assignment of error.

{¶ 2} Donegan-Lawson's convictions arise from her participation in a fraudulent Medicaid billing scheme involving Jackson Nsilulu, a licensed chemical dependency counselor. Nsilulu operated a service called DA & DA Clinic in Dayton, Ohio, and Donegan-Lawson was a licensed chemical dependency counselor assistant. She was one of several "independent contractors" working for Nsilulu's service between 2013 and 2018. Although Nsilulu closed the business in 2018, ostensibly due to his failing eyesight, it eventually caught the attention of the Ohio Attorney General's office, who discovered major billing

discrepancies from the DA & DA Clinic. Nsilulu entered a plea of guilty to and was convicted of fifth-degree felony Medicaid fraud as a result. (*See, e.g,* Aug. 15, 2023 Tr. at 69.)

{¶ 3}     Donegan-Lawson's basic duties as a counselor for DA & DA Clinic were as follows: she would meet with clients for a maximum of an hour per session, and then submit a case progress note summarizing the meeting to Nsilulu. *Id.* at 36. Nsilulu would then use the note to create and submit a bill to Medicaid. *Id.* at 38. Medicaid tendered Nsilulu $65 to $82 per hour for each meeting, and he paid Donegan-Lawson approximately $15 to $20 for each meeting. Nsilulu did not personally supervise any of these meetings, nor did he participate in any of these meetings, nor did he ever verify with the clients that the meetings occurred. *Id.* at 29.  He simply approved the case progress notes and then billed Medicaid for the time stated in the notes, using his own Medicaid billing account. *Id.* at 38.

{¶ 4}     The state argued that Donegan-Lawson did not actually meet with clients as described in her progress notes.  At trial, Jacquiline Sherrill and Shelly Brooks testified that they had suffered from chemical dependency and had sought treatment but denied knowing Donegan-Lawson or ever having used her for counseling services. *Id.* at 16-17, 21-22. Donald Edwards testified that he received only one counseling session from Donegan-Lawson seven or eight years prior to trial. *Id.* at 10.  Ohio Attorney General Medicaid Fraud Special Agent Tiffany Cruz testified that based on explanation of payments records she obtained from Medicaid Managed Care Provided CareSource, DA & DA Clinics was paid for chemical dependency treatment by Donegan-Lawson for Edwards, Sherrill and Brooks, comprising 61 hours for Edwards, 81 hours for Sherrill, and 64 hours for Brooks. *Id.* at 78-80. She also reviewed the corresponding case notes for those three clients, each of which purported to be signed by Donegan-Lawson and countersigned by Nsilulu. *Id.* at 75-77 & State's Ex. 3A, 3B, and 3C.  Finally, Special Agent Cruz subpoenaed Nsilulu's and Donegan-Lawson's bank records and was able to match payments from Nsilulu's business to Donegan-Lawson totaling $9,922.21 related to the claims for Edwards, Sherrill, and Brooks. *Id.* at 64-95.

{¶ 5}     Nsilulu testified at Donegan-Lawson's trial, and testified that he did not submit a bill for Medicaid repayment unless an independent contractor had provided him a case progress note indicating that services had been rendered to a client. *Id.* at 38.  He stated that around 2017, he had suffered a stroke and became legally blind, and that he began to suffer mental health issues. And at around this same time, he began to be

investigated for Medicaid fraud—he testified that "I just got a lawyer and told her that just check whatever is going on and then tell me what the base outcome for me. So they told me I needed to reimburse the money, they found some stuff, so I did it." *Id.* at 43. He admitted that he pleaded no contest to charges because "I wanted to go. I was so depressed at that time, I just wanted to cut it off." *Id.* He described the situation as a "misfil[ing]" and a "misbilling error." *Id.* at 45-46. He identified several progress notes for Edwards, Sherrill, and Brooks that purported to be signed by Donegan-Lawson and then cosigned and approved by Nsilulu himself, and which had been submitted for Medicaid payments. *Id.* at 39-46. But he denied creating notes with Donegan-Lawson's name on them or signing her name to a note. *Id.* at 46. And on cross-examination, he stated that he did not recall pleading guilty to Medicaid fraud. *Id.* at 47.

{¶ 6} Finally, during the investigation Donegan-Lawson submitted to a voluntary interview with Special Agents Cruz and Jolene Shepherd and denied ever submitting a false claim to Medicaid or being asked by Nsilulu to do so. That interview was recorded without Donegan-Lawson's knowledge and was played at trial in its entirety without objection. *Id.* at 83-85; State's Ex. 6.

{¶ 7} Donegan-Lawson now asserts two assignments of error with the trial court's judgment:

> I. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding her guilty of Medicaid Fraud and Theft, as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

> II. The trial court committed plain error by failing to merge appellant's convictions for Grand Theft under R.C. 2913.02(A)(3) and Medicaid Fraud under R.C. 2913.40(B).

{¶ 8} Donegan-Lawson first argues that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Pursuant to *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, to determine whether a conviction is supported by sufficient evidence of guilt, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt." *Id., following Jackson v. Virginia*, 443 U.S. 307 (1979). But because determinations of credibility and weight of the testimony are primarily for the trier of fact, *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus, the finder of fact may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Moreover, given that this appeal stems from a bench trial, this court must be mindful of the maxim that a "trial judge is presumed to know the applicable law and apply it accordingly." *State v. Dear*, 10th Dist. No. 14AP-298, 2014-Ohio-5104, ¶ 11, quoted in *State v. Davis*, 10th Dist. No. 17AP-438, 2018-Ohio-58, ¶ 23.

{¶ 9} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 10} In analyzing Donegan-Lawson's first assignment of error, we must observe that the state has not presented a particularly strong factual case. By its own evidence, all of the fraudulent bills were submitted by Nsilulu. And although the evidence suggests that Donegan-Lawson may have signed and submitted fraudulent case progress notes, even that evidence is questionable—for example, the state failed to present an expert's evidence to establish that Donegan-Lawson had indeed signed the notes. Finally, Nsilulu was a clearly unreliable witness—he testified that he pleaded no contest when he had in fact pleaded guilty, he minimized his own role in the billing that was the subject of the prosecution and consistently described the fraud as "misfiling" or "misbilling" that happens all the time. But as the state argued in response to Donegan-Lawson's Crim.R. 29 motion, "taken into the light most favorable to the State, Mr. Nsilulu's testimony that *he only submitted claims to Medicaid when there was a progress note, and all of these progress notes were submitted*

*by the Defendant.* I believe that shows, Your Honor, it supports the contention that the Defendant knowingly caused to be submitted to Medicaid on a false or misleading statement." (Emphasis added.) Tr. at 98. That testimony provides a sufficient basis to find Donegan-Lawson guilty of Medicaid fraud and theft. And although at least some of this court might reach a different conclusion regarding Nsilulu's credibility and therefore discount his testimony on that point, we cannot now overrule the fact finder's reasonable inferences based on the evidence presented. Although the evidence here is tentative and some of the testimony is questionable, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice, or that this is an exceptional case where the evidence weighs heavily against Donegan-Lawson's conviction. Accordingly, we conclude that her conviction was supported by sufficient evidence and was not against the manifest weight of that evidence, and therefore overrule Donegan-Lawson's first assignment of error.

{¶ 11} As for Donegan-Lawson's second assignment of error, the state has conceded that it was required to elect which offense it wanted to proceed on prior to sentencing, and it did not do so. (*See generally* Nov. 2, 2023 Tr.; no election of offenses made). Although the trial court sentenced Donegan-Lawson to concurrent terms of probation, that is insufficient to remedy the error. *See, e.g.*, *State v. Bamonte*, 10th Dist. No. 19AP-875, 2022-Ohio-1331, ¶ 70, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 1 (recognizing that it was plain error to sentence defendant for Grand Theft and Medicaid Fraud where the two offenses were allied offenses of similar import). Accordingly, Donegan-Lawson's second assignment of error is sustained.

{¶ 12} Having overruled Donegan-Lawson's first assignment of error, and sustained the second assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand this case for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part; case remanded.*

MENTEL, P.J., concur.
LUPER SCHUSTER, J., concurs in judgment only.

———————————